UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,

-against-

21-cr-359 (LAK)

JOSE ALFREDO AGUAS OVEIDO, et al.,

Defendants.
------------------------------------------x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

      The defendants are charged with conspiring to import cocaine into the United States. Defendant Jose Alfredo Aguas Oviedo moves to dismiss Count Two of the indictment, which charges defendants with engaging in a cocaine importation conspiracy in Colombia from about May 2021 to September 2021, on the ground that the government allegedly failed to produce purportedly exculpatory evidence in violation of *Brady* and based upon alleged "outrageous conduct" by the government in its investigation of this case.[1] In the alternative, he argues that the government should be required to produce purportedly exculpatory evidence allegedly in its possession. He argues also that he should be permitted to conduct depositions of ten foreign witnesses pursuant to Federal Rule of Criminal Procedure 15. For the reasons set forth below, defendant's motion is denied.

      Mr. Aguas Oviedo's motion largely is premised on the criminal history and prior deactivation of the Drug Enforcement Agency's ("DEA") confidential source ("CS-5"), who was involved in the investigation of this case. Mr. Aguas Oviedo contends that "information regarding CS-5's criminal history and prior deactivation as a DEA [s]ource and an FBI informant is highly

---

[1] Two of Mr. Aguas-Oviedo's co-defendants, Jey James Roldan Cardenas and Mauricio Rene Garcia Quimbayo, join Mr. Aguas Oviedo's motion insofar as it applies to them.

exculpatory because it can be used to establish [his] affirmative defense that he was acting at the direction of the [Colombian National Police]."[2] He argues also that "[w]hether the DEA followed its own protocols for the reinstatement of CS-5 are [*sic*] material to the veracity of the government's investigation in this case – an investigation which is demonstrably flawed."[3] He fails to explain, however, how CS-5's criminal history or whether the DEA followed its protocols are relevant to his public authority defense. In any event, to the extent that CS-5's criminal history is impeachment information subject to disclosure under *Giglio*, "the [g]overnment has affirmed . . . that it will provide *Giglio* and *Jencks* Act material sufficiently in advance of trial pursuant to applicable law and in accordance with any schedule set by the Court."[4] There accordingly is no reason at this time for the Court to order the government to produce CS-5's full DEA file or the other materials he requests.

Nor is there any merit to Mr. Aguas Oviedo's argument that Count Two should be dismissed based upon the government's alleged "outrageous conduct." "The Supreme Court has suggested that in an extreme case, [g]overnment involvement in criminal activity might be 'so

---

[2] Dkt 70 (Def. Mem.) at 17-18.

[3] *Id.* at 18.

[4] Dkt 78 (Govt. Opp. Mem.) at 16. *See also United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) ("[T]he Government 'suppresses' evidence within the meaning of *Brady* only if it fails to disclose *Brady* and *Giglio* material in time for its effective use at trial or at a plea proceeding.").

Mr. Aguas Oviedo's argument for dismissal of Count Two or, in the alternative, to disclose purportedly exculpatory records of his prior participation in a drug seizure in Colombia also is unpersuasive. As the government notes, "[e]ven if the Colombian May 7 Seizure Record were otherwise subject to disclosure under *Brady*, 'the facts are already known by the defendant.'" Dkt 78 (Govt. Opp. Mem.) at 17 (quoting *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) ("[T]here is no improper suppression within the meaning of *Brady* where the facts are already known by the defendant.").

outrageous that due process principles would absolutely bar the [g]overnment from invoking judicial processes to obtain a conviction.'"[5] Mr. Aguas Oviedo argues that the government's conduct in this case was outrageous because it "relied on a deactivated criminal informant [(CS-5)] who was convicted of criminal acts that betrayed the core of his duties as an informant" and CS-5 "failed to preserve 'critical evidence.'"[6] Due process, however, "does not forbid the[] employment" of "dishonest and deceitful informants."[7] Indeed, Mr. Aguas Oviedo's argument is especially weak in these circumstances given that the government is not "relying exclusively or even principally on an informant's word."[8] None of the alleged flaws in the government's conduct, taken individually or cumulatively, even if established, would constitute a due process violation that would warrant dismissal of Count Two.

Mr. Aguas Oviedo's argument that he should be permitted to conduct depositions of ten prospective witnesses who allegedly are located in Colombia also is unpersuasive. Under Federal Rule of Criminal Procedure 15, courts may grant a motion to depose a prospective witness " because of exceptional circumstances and in the interest of justice."[9] "A movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice."[10] Mr. Aguas Oviedo fails to demonstrate that the

---

[5] *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973)).

[6] Dkt 70 (Def. Mem.) at 24, 26.

[7] *United States v. Myers*, 692 F. 2d 823, 846 (2d Cir. 1982).

[8] Dkt 78 (Govt. Opp. Mem.) at 21.

[9] Fed. R. Crim. P. 15(a)(1).

[10] *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001).

prospective witnesses are unavailable. For eight of the witnesses, he has not made any effort to contact them to discuss their willingness to testify at trial. For the two witnesses whom he has contacted, he does not state whether they responded that they are willing to testify.[11] His application therefore is denied on the ground that he has not established that the witnesses are unavailable.[12] The Court has considered the defendant's other arguments and found them unpersuasive.[13]

For the foregoing reasons, defendant's motion to dismiss and for further relief (Dkt 68) is denied.

SO ORDERED.

Dated:      October 2, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[11] With respect to one of the witnesses, Mr. Aguas Oviedo states that he "was initially open to speaking with defense investigators, however the line of communication was abruptly terminated, upon information and belief, at the direction of the DEA." Dkt 70 (Def. Mem.) at 32. With respect to the other, he states that his counsel spoke with him about his willingness to travel to the United States to testify but does not provide the witness's response. *Id.* at 29. *See United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (denying government's motion to take depositions in part because the Court was "unable to determine whether it has made the requisite 'good-faith effort to produce the person to testify at trial'") (quoting *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984)).

[12] Given that the Court determines that Mr. Aguas Oviedo has not demonstrated that the witnesses are unavailable, it need not and does not now decide whether he has satisfied the other criteria set forth by the Second Circuit.

[13] Mr. Aguas Oviedo submitted a surreply in which he hypothesized that one of his co-defendants, Claudia Isabel Mercado Scalzo, "was working at the direction of CS-5 and SOI-3 to aid them in conducting their investigation." Dkt 88 at 1. Given that he did not seek leave to file the surreply and the Court did not grant him permission to do so, the Court need not consider it. In any event, even if the Court were to consider the surreply, it would not aid his arguments in his motion. Indeed, his counsel offered no response during oral argument as to the fact that Ms. Mercado Scalzo pled guilty before the surreply was filed.